Williams, Caliri, Miller & Otley, P.C.
1428 Route 23
Wayne, New Jersey 07470
972-694-0800
Attorneys for Defendants
Raymond Scott and David Mays

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MY WAY PRODUCTIONS 2, LTD, individually and as a member of Z & M MEDIA, LLC and HIP HOP GLOBAL MEDIA, LLC<br><br>Plaintiff,<br><br>vs.<br><br>Z & M MEDIA, LLC; HIP HOP GLOBAL MEDIA, LLC; RAYMOND SCOTT; and DAVID MAYS,<br><br>Defendants. | **CERTIFICATION OF DEFENDANT DAVID MAYS IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION**<br><br>CIVIL ACTION<br><br>FILE NO. 2009-cv-01643-WJM-MF |

The following certification of Defendant David Mays is made in opposition to Plaintiff's application for a preliminary injunction:

1. Raymond Scott and I are the managers of two companies, Z & M Media, LLC (hereinafter referred to as "Z&M") and Hip Hop Global Media, LLC (hereinafter referred to as "HHG"), pursuant to Operating Agreements and Employment Contracts.

2. We are also members of the companies. Together we have a majority interest, 60½ %, in the companies.

3. Plaintiff has a minority interest of 30% in the companies. Three other people have the remaining 9½ % interest.

4. Z&M publishes a bi-weekly magazine, Hip Hop Weekly. This magazine is the bible of the Hip Hop industry and is read throughout the United States. We have a readership estimated to be one million people.

5. Raymond Scott and I are pioneers in the field of Hip Hop journalism and have an excellent reputation throughout the industry.

6. Contrary to the false statements in Plaintiff's complaint, we have not abused or exploited Plaintiff, Z&M or HHG, nor have we materially breached our obligations in the Operating Agreements or our employment contracts.

7. We have managed and continue to manage Z&M and HHG with diligence and fidelity, often working around the clock to meet deadlines and produce a quality magazine. Consequently, the companies have continued our employment under the same terms and conditions set forth in our employment contract.

8. Despite the severe economic conditions, the companies have a great future. Attached is a copy of a letter dated April 24, 2009, Exhibit "A", from our distributor which demonstrates the success that is being achieved by the companies.

9. The nature of the companies' business requires cash withdrawals from time to time. The cash withdrawals during the times mentioned in the complaint were for legitimate business purposes and were in accordance with the latitude afforded managers of companies by the business judgment rule. Moreover, I have personally paid into the companies since their inception in 2006 over $200,000.00. The money was used to cover operating expenses.

10. We have in the past advised Plaintiff and continue to advise Plaintiff that it may have a reputable accounting firm chosen by it examine the companies' books and records

and other financial information and data. We are confident that such an examination will confirm what I have stated in paragraph 9 of this Certification. Plaintiff has not accepted that invitation.

11. Only recently has the Plaintiff requested information and financial data. We supplied that information and data, and will comply with any further requests. We have nothing to hide, and we fully recognize our fiduciary duty to the companies and its members, including the Plaintiff.

12. Plaintiff in its Complaint contends, often only on information and belief, that in managing the companies we have not strictly followed in every instance the exact provisions of the Operating Agreement. These contentions fail to recognize that the companies at present are relatively small, grossing only a little in excess of two million dollars annually. Such businesses cannot be run with the precision and exactitude of an IBM or Hewlett Packard. We have managed these companies with a minimum of expense and a maximum of personal sweat labor. We are confident that an objective observer will applaud not condemn our management of these companies.

13. Michael Misick signed the "verification" of the complaint. I have been informed by him and by his wife, LisaRaye, that he and his wife were and may still be the owners of the Plaintiff, each owning 50% of the Plaintiff. I have also been informed by his wife they are in a divorce proceeding.

14. This litigation was begun by Mr. Misick, the holder of a minority interest in these companies, in order to obtain control of the companies for his personal financial benefit to the great financial detriment of the companies and their other members.

15. Permitting Michael Misick to gain control of these companies would be a disaster for the companies. He has recently resigned as Premier of Turks and Caicos in the face of a criminal investigation by the British government for corruption. See the attached newspaper article, Exhibit "B." He has also been charged with rape.

16. I have recently spoken to him by telephone on several occasions. He has advised me that he is in the Dominican Republic. Based on information and belief, he is staying in the Dominican Republic in an attempt to avoid prosecution. I have authorized my attorneys to take his deposition as soon as possible, and I expect that the deposition will quickly uncover his scheme to take control of these companies.

17. I question whether this lawsuit has been properly authorized by Plaintiff. LisaRaye has informed me that she did not authorize or consent to the bringing of this lawsuit, and that she, holding a 50% interest in the Plaintiff company, wants this lawsuit to be dismissed.

18. My attorney has advised me that in order to obtain a restraining order or a preliminary injunction, Plaintiff must post a bond to indemnify the Defendants and Z&M and HHG. The amount of the bond should be very high. The companies have an excellent chance of earning in a few years as much as 20 million dollars annually. The adverse publicity generated by a grant of a preliminary injunction would severely damage and very probably destroy the companies.

19. Severe damage and the probable destruction of the companies would also occur if Raymond Scott and I are removed as managers, or if onerous restrictions are placed upon our management of the companies. Our advertisers, distributors and customers rely on us and our excellent reputation for quality and honesty in the Hip Hop industry and culture.

Michael Misick does not have any experience in managing magazine publications. Our departure would quickly lead to the destruction of the companies.

I certify that the foregoing statements made by me are true to my personal knowledge, except that as to statements on information and belief, I am informed and believe them to be true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: May 4, 2009

_____
David Mays

### CERTIFICATION OF FAXED SIGNATURE

Burrell Ives Humphreys, of full age, certifies as follows:

1. I am an attorney at law of the State of New Jersey and am of counsel to the law firm of Williams, Caliri, Miller & Otley, P.C., attorneys for Defendants Raymond Scott and David Mays, in the above entitled matter. I make this certification based upon my personal knowledge.

2. The facsimile copy of the signature of David Mays in the Certification in Opposition to Plaintiff's Application for a Preliminary Injunction is genuine. An original copy of David Mays' signature will be available for production if so requested pursuant to Rule 1:4-4(c).

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: May 4, 2009

_____
Burrell Ives Humphreys, Esq.



Exhibit A

## CURTIS CIRCULATION COMPANY, LLC
Anthony DiBisceglie
Vice President, Business Development

April 24, 2009

Mr. David Mays
Z & M Media, LLC
1810 NE 153rd Street, Suite 1
N. Miami Beach, FL 33162

Dear Dave:

    As discussed yesterday, it looks like 2009 will be another GREAT year for Hip-Hop Weekly!

    First please recall that at a time where the industry is down double digit figures in 2008, Hip-Hop Weekly is showing a growth of 11% for 2008 vs. 2007 and all this came with an increase in sales efficiency of over 5 points! Not many titles can boast about such growth!

    As you know, in February of 2009, we expanded the distribution of Hip-Hop Weekly into the CVS chain and many other retailers across the US. Although a bit early to read the results, it is looking great and early indications are showing sales trends higher than those achieved in 2008! We are confident this recent expansion will be a success and we will be looking to expand it further within the next 45 to 60 days once we can fully read the results. As you know, we have already begun the exploration of check-out pockets in supermarket chains that have ethnic racks in their stores. We are awaiting the buyer approvals of our recommendations and will keep you updated on the status.

    Onward & upward!!

                                        Sincerely

                                        Tony DiBisceglie

730 River Road, New Milford, NJ 07646-3048   Tel: (201) 634-7416  Fax: (201)634-7494
E-Mail: anthonyd@Curtiscirc.com





# MICHAEL MISICK RESIGNS AFTER CORRUPTION PROBE:
## Turks and Caicos Islands premier quits a week earlier than expected.

March 25, 2009



*The Independent is reporting that Turks and Caicos Islands premier Michael Misick has resigned from office following an investigation that found "clear signs of corruption."

"I will tender my resignation, effective today, to allow the new PNP party leader to become Premier," Misick, 43, announced Monday.

Misick, who denies selling Crown land for personal gain, quit a week earlier than expected. His departure follows allegations that his party misused public funds and profited from the sale of government-owned land in controversial deals, including one to build a Dubai-style luxury resort off the coast of the islands in the West Indies.

Britain plans to dissolve the territory's cabinet and legislature following the inquiry, prompting accusations that civil servants in London failed to scrutinize a series of deals. One saw an east European oligarch acquire land worth millions of pounds for an annual rent of just £170.

The Foreign Office has said it will suspend much of the islands' constitution and hand power to the resident British governor, Gordon Wetherell, ending Misick's six-year tenure as Premier.

Misick, who is separated from his wife, the actress LisaRaye McCoy-Misick, owns two private jets, wears designer suits and once claimed to have bought his wife a Rolls-Royce Phantom, which transpired to be on a £4,700-a-month lease in her name.